[Civ. No. 35659. Second Dist., Div. Five. June 19, 1970.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and DAVID CARL CHILDS, Respondents.

**COUNSEL**

T. Groezinger, Loton Wells and A. C. Jones for Petitioner.

Rupert A. Pedrin, Nathan Mudge, Sheldon M. Ziff, Gabriel L. Sipas, Freshman, Marantz, Comsky & Deutsch and Warren C. Deutsch for Respondents.

**OPINION**

SELBER, J.*—Herein we review an order of respondent Workmen's Compensation Appeals Board granting an award of compensation to an inmate of the Los Angeles County jail who was injured while working as a member of a road gang in the Malibu area of Los Angeles County. The sole question raised in the petition for writ of review is whether the inmate was an employee of the Sheriff's Department of the County of Los Angeles at the time of the injury within the meaning of the Workmen's Compensation Act.

The facts in this case are developed primarily through the testimony of the applicant, David Carl Childs, given at the hearings on May 16, 1969, and August 28, 1969.

Applicant had been in jail for about two and one-half months prior to the date of his injury which occurred on November 3, 1966. On that day he was helping to haul equipment needed to lay a sewer pipe along a highway when he was struck with a shovel by another inmate because he would not give him cigarettes. He had worked daily on various projects for about two months, and on this specific job for about a week before the injury. He worked eight hours a day. He was transported to and from the job site by a sheriff's department bus and was paid 50 cents per day by the sheriff's department. This was paid to him by way of credit slips which he exchanged once a week at the store located at the Malibu camp. He further testified that he had volunteered to work on the highway job, which was the hardest work available, and that he was not required to do so.

The only other witness who testified was a lieutenant in the Los Angeles County Sheriff's Department who was in charge of the Malibu camp several days per week. He produced the applicant's camp card showing he was assigned to road crew number 5.

---

*Assigned by the Chairman of the Judicial Council.

Findings and award issued on September 25, 1969. The referee found that applicant was injured while employed by the sheriff's department of the county and granted benefits to the applicant. A petition for reconsideration was denied on November 4, 1969, by the Workmen's Compensation Appeals Board. It is from this order of denial that petitioner seeks review.

The question of the right of a prisoner to receive workmen's compensation for services performed by him outside of the prison itself was first considered by an appellate court of this state in *California Highway Com.* v. *Industrial Acc. Com.* (1926) 200 Cal. 44 [251 P. 808, 49 A.L.R. 1377]. In that case the court held that an inmate of a state prison performing labor on a state highway in return for a credit on his sentence time was an employee and could recover compensation. It was further held that despite the fact that the prisoner had lost his civil rights as a result of his felony conviction, when he was employed by the State Highway Commission pursuant to the authority to employ prisoners granted under the Convicts Road Camp Bill (Stats. 1923, ch. 316, p. 667), he was, in effect, restored to such limited civil rights as were necessary to create the relation of master and servant between him and the State Highway Commission. The court reasoned that the inmate was at liberty to either accept the work or refuse it and was thus a volunteer; that having accepted the work in return for compensation he was entitled to the benefits enjoyed by employees under the Workmen's Compensation Act, which act should be liberally construed to carry out its beneficent purposes. (*Western Indem. Co.* v. *Pillsbury,* 172 Cal. 807 [159 P. 721].)

Since the time of that decision, state prisoners have been expressly excluded by statute from workmen's compensation benefits.[1] However, city and county jail inmates have not been so excluded. When working in the prevention or suppression of fires such inmates are by law deemed to be employees and entitled to benefits upon receipt of an injury.[2] Otherwise, in order to be eligible, inmates, at the time of injury, must fall within the definition of an employee as set forth in Labor Code section 3351.[3]

The question involved herein was next considered in *Pruitt* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 546 [68 Cal.Rptr. 12]. This decision is referred to as controlling in the opinion of the referee and as without material distinction in the opinion of the board.

---

[1]See, for example, Labor Code section 3352 subdivision (e) and Penal Code section 2700.

[2]Penal Code sections 4017 and 4125.1.

[3]Labor Code section 3351 defines an employee for workmen's compensation purposes as follows: " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed. . . ."

In the *Pruitt* case, the applicant was also an inmate of a county jail. He was "loaned out" to a city to work on its sewerage plant in return for which labor he received a carton of cigarettes per week and a fixed reduction of his sentence of five days per every 30 days of work. His work was found to be voluntary. Under these facts the court held the inmate to be an employee within the definition of Labor Code section 3351. At page 549, the court in *Pruitt* stated: "(1) Petitioner is not an inmate of a state prison, not a felon who has lost his rights as a citizen; (2) . . . he was at the time of his injury not performing compulsory work imposed as an incident to his incarceration, the labor performed was voluntary; (3) he was not working for the county, he had been 'loaned out' to the city and was working for it. He was at the time of the injury solely under the latter's control." At page 552, the court said: "We hold that when a county jail inmate is loaned out to a third party for work on a voluntary basis, whether that third party be a private corporation or a municipality, and when he is under the control of the latter with the right in said third party to direct the manner in which the service shall be performed, there is (1) a relationship of master and servant, (2) an implied contract of hire and therefore by statutory definition (in Lab. Code, § 3351) the inmate becomes an 'employee' and as such entitled to workmen's compensation benefits when injured in the course and scope of his employment."

We have already determined that the applicant herein is a county jail inmate. We must next determine if the board was correct in holding the work to be voluntary. The only evidence on this issue presented at the time of the hearings was the testimony of the applicant that he volunteered for the job and that he was not required to do so. While appropriate objection to the above testimony might have been made that it amounted to a mere conclusion of the applicant no such objection was lodged and no contrary evidence was introduced.

Petitioner now argues that applicant was working in a work program incidental to his incarceration, not under a contract of hire, but pursuant to the county's authority over his person, and thus, that there could be no consideration for such a contract. To support this view, petitioner relies on the pertinent language of Penal Code, section 4017.[4]

That section, as will be noted, provides that a county board of supervisors *may* adopt an appropriate order requiring county prisoners to per-

---

[4]Penal Code section 4017 provides in relevant part that "All persons confined in the county jail, industrial farm or road camp under a final judgment of imprisonment rendered in a criminal action or proceeding . . . may be required by an order of the board of supervisors to perform labor on the public works or ways in the county. . . ." To the same effect, see Government Code, section 25359.

form labor on public works. In the *Pruitt* case, the respondent County of Nevada had indeed enacted Nevada County Ordinance No. 198 providing for the use of county jail prisoners on county public work projects thereby making such work compulsory as an incident of incarceration. In that case it must be assumed that had not the applicant been employed by the city his recovery of benefits would have been barred.

In the instant case, real party in interest concedes that if the County of Los Angeles had adopted such an ordinance there would be merit to the petitioner's argument. However, the record of the proceedings is devoid of reference to the existence of such an enactment. In its brief in this court, petitioner responds to the challenge by asserting that the absence of a direct order by the county is not material, since the county had the right of compulsion. This position is without authority. Penal Code section 4017 makes it discretionary for a county to adopt such legislation. The failure to exercise such discretion can only be interpreted as meaning that this county did not desire to so act. An extension of petitioner's logic would compel a finding that the same result would obtain regardless of whether or not the county passed an ordinance and that the grant of discretion contained in Penal Code section 4017 is meaningless. We decline to accept such an interpretation.[5]

It must finally be determined whether the fact that in *Pruitt* the applicant was "on loan" to a third party, the city, constitutes a material distinction, and if so, if that fact alone constitutes a condition precedent to the recovery of compensation benefits to the applicant in this case. We think not. In *Pruitt,* because of the county ordinance, any labor performed on public projects for the county would not be voluntary. The inmate could not be an employee of that county. However, because of the fortuitous circumstance in that case that the prisoner was actually assigned to the city, it then became necessary to that court to determine the status of the applicant to the city. In considering the accuracy of the decision of the board as to the status of petitioner as "an employee" the court followed the established test of examining the substance and the essence of the relationship between the applicant and the party sought to be charged as an employer. (*Van Horn* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 457 [33 Cal.Rptr. 169].) It properly found that the work was voluntary and that the service was per-

---

[5]While the board of supervisors did not adopt an express ordinance, on July 27, 1936, it did adopt a resolution entitled "In re Sheriff's Department: Resolution Establishing Eight Detention Camps." This resolution treats with the general subject matter of prisoners working on public projects; however, in its wording it is insufficient, in our opinion, "to require" prisoners to perform labor on public works projects pursuant to Penal Code section 4017.

formed for a gratuity. Thus, an employer-employee relationship was established.

In the present case, in the absence of a county ordinance requiring inmates to perform such labor as incident to the incarceration it becomes necessary only to examine the relationship between the inmate and the county. We have already determined his work was voluntary. He performed a service in return for a gratuity, and in performing such service he was acting under the direct control and supervision of agents of the county. The meagerness of the compensation, of course, is not a factor in determining the nature of the relationship, although it does affect the amount of the benefit to be paid the employee. (*Union Lbr. Co.* v. *Industrial Acc. Com.* (1936) 12 Cal.App.2d 588, 596 [55 P.2d 911]; *Pruitt* v. *Workmen's Comp. App. Bd., supra.*) We thus find that the applicant was an employee of the County of Los Angeles at the time of his injury and entitled to benefits under the workmen's compensation law. No policy of the law has been more often stated nor more strongly urged than that which requires a liberal interpretation to be given in favor of the workman in all workmen's compensation matters. (Cal. Const., art. XX, § 21; Lab. Code, § 3202.)

Finally, we note that the policy underlying modern penology places great stress upon the theory of rehabilitation of those convicted of crime. Incarceration by itself is of little aid in preventing recidivism upon release by those who may be deemed anti-social. The Legislature, penal authorities and the courts have thus developed meaningful programs to enable inmates of state and local institutions to eventually take their proper place in society. Early parole, enlarged use of probation upon suitable conditions, psychological and psychiatric treatment, educational courses, job training and work furlough release are just a few of the methods developed to help structure the return of a prisoner to the community. Voluntary work projects are a further and valuable means towards the accomplishment of this end. To preclude the right of an inmate to be compensated for injury sustained while performing such labor would tend to discourage the voluntary enlistment by prisoners in such beneficial programs and hence would be unduly restrictive and contrary to the public policy considerations favoring attempts at rehabilitation.

The award is affirmed.

Stephens, Acting P. J., and Reppy, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 12, 1970.